## UNITED STATES v. LEMORE.
### No. 279.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

Joseph A McNamara, U. S. Atty., of New York City, Julius C. Martin, Director, Bureau of War Risk Insurance, of Washington, D. C., Wilbur C. Pickett, Sp. Asst.

to Atty. Gen., and Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., for the United States.

A. Pearley Feen and Louis Lisman, both of Burlington, Vt., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee has a judgment, entered on the jury's verdict, finding him totally and permanently disabled before the lapse of his war risk insurance policy August 31, 1919. His suit, commenced February 12, 1932, resulted in a verdict of $11,672.50 on July 14, 1936. Appellee enlisted September 2, 1917, and served in the military forces overseas from June 4, 1918, to July 29, 1919. The appellant's motion for a directed verdict was overruled and this alleged error is the sole question presented on this appeal.

The policy was issued December 1, 1917, pursuant to the War Risk Insurance Act (chapter 105, §§ 400–402, 40 Stat. 409). Before entering military service, the appellee was in good health and had worked as a weaver and cloth cutter. While in the service, he contracted influenza on two occasions and was incapacitated ten days each time. In the service he became a motorcycle rider, carrying dispatches back and forth from headquarters to the front and oftentimes slept on wet ground and in wet clothes. On one occasion he collided with a stone wall and remained in a hospital ten days. His legs and back were affected. After this his feet swelled at times. In March, 1919, he became lame and was compelled to give up motorcycle riding and occasionally was unable to walk. He later returned to light duty and was discharged July, 1919, the examining surgeon certifying that he was physically and mentally sound and free from disability and his immediate officer executing a certificate to the same effect. After discharge his feet bothered him and he limped and he testified that his legs were swollen and his back "bothered" him when he arrived home. However, he returned to his pre-war occupation as a weaver, working on a piece work basis and earning substantial wages, and continued to do so until March, 1920, when he says he gave up because his feet were bothering him. In May, 1920, he returned to work, working off and on at various occupations. His physician diagnosed his case as arthritis which during his period of treatment was more or less in acute stages, accompanied by pain, swelling, and inflammation of the joints. It was mostly confined to his feet and ankles, although his physician said his hands were also affected.

In September, 1922, he joined the National Guard of the United States and, when examined, his condition was found normal, his bones and joints were normal, and the examining physician found no physical defects.

In order to recover under the terms of this war risk insurance contract, the appellee had the burden of proving by substantial evidence that he suffered from arthritis on the date of his discharge from military service or before the date of expiration of the policy to such an extent that he was unable to pursue any substantially gainful occupation and that the disability was founded upon conditions which made it reasonably certain that he would remain so incapacitated throughout his life. U. S. v. Spalding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Lumbra v. U. S., 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; U. S. v. Wilfore, 66 F.(2d) 255 (C.C.A.).

At the time of his discharge he was found physically and mentally sound with no disabilities noted, and he stated to his commanding officer that he was not suffering from any disability or impairment of health. Undoubtedly he had arthritis at the time of the trial but that was years after his discharge. Appellee could hardly have discharged the duties he undertook as a soldier, while affected with arthritis, without an official record having been made that he suffered therefrom during his military service. His doctor was uncertain as to when he first diagnosed his condition as arthritis and he had no records prior to 1926. Both physicians who examined and attended him testified that his condition was progressively worse during the period that the appellee was under their observation. But the physician who examined him in 1925 stated that the arthritis was then confined to the anterior arches of the feet and was not such as to prevent work, though it would cause pain and discomfort. Nothing in the medical testimony warrants the claim that he suffered from total permanent disability on or before August 31, 1919. Such evidence was essential to support this verdict. U. S. v. Hall, 86 F.(2d) 537 (C.C.A.1); Tracy v. U. S., 68 F.(2d) 834 (C.C.A.2); U. S. v. Smith, 68 F.(2d) 38 (C.C.A.2); Wilks v. U. S., 65 F.(2d)

775 (C.C.A.2). Though the influenza may have had a part in causing the arthritis which developed later, that does not justify our supporting this verdict. It is not enough that the disability followed later upon conditions which arose while the policy was in force. U. S. v. Wilfore, supra. Moreover, with the exception of the interruption of work in March 1920 for about six weeks and again in the fall of 1920 for two months, the appellee was shown to have engaged in work for several years after the lapse and hence failed to prove total permanent disability. Wilks v. U. S., supra.

Under all these circumstances it was error to submit the question to the jury. U. S. v. Clapp, 63 F.(2d) 793 (C.C.A.2).

Judgment reversed.